## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREME WARNER, | : | |
| Plaintiff, | : | 2:21-cv-2104-JMY |
| | : | |
| vs. | : | |
| | : | |
| KAMINSKY LAW LLC and | : | |
| ANTON KAMINSKY ESQ., | : | |
| Defendant. | : | |

## MEMORANDUM

**Younge, J.**                                                         **January 31, 2022**

Currently before the Court is the Defendants' Motion to Dismiss for Failure to State a

Claim (ECF No. 2) and Motion for Sanctions Pursuant to Rule 11.  (ECF No. 6.)  The Court

finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78; L.R.

7.1(f).  For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss but

will deny Defendants' Motion for Rule 11 Sanctions.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed this action in which he alleges that Defendants violated the Fair Debt

Collections Practices Act ("FDCPA"), 15 U.S.C. § 1962, *et seq.*  (Complaint ¶ 1, ECF No. 1.)

His claim arises from underlying litigation filed in the Philadelphia Court of Common Pleas by

Defendants on behalf of their client Opulent Watches LLC ("Opulent").[1]  *Opulent Watches LLC*

*v. Jereme Warner*, No. 0676 (C.P. Philadelphia December 14, 2020).[2]  Plaintiff alleges that

---

[1]  Opulent Watches LLC is a local business located at 108 E. Pennsylvania Blvd, Feasterville, Pennsylvania and has been in the business of selling luxury items for over twelve years.  (Opulent's Complaint ¶¶ 11-12.)

[2]  Complaint filed in *Opulent Watches LLC v. Jereme Warner*, No. 0676 (C.P. Philadelphia December 14, 2020) hereinafter referred to as "Opulent's Complaint" attached to the Complaint Ex. B, ECF No. 1-2.

Defendants acted as debt collectors when they filed the Opulent Complaint against him in the underlying action which was filed more than 4000 miles from his residence in violation of the venue provisions in the FDCPA.[3]  (Complaint ¶¶ 4, 10, 12, 13-14).

Plaintiff further avers that at all relevant times, he was a resident of the State of Arizona, Maricopa County who met the definition of a consumer under the FDCPA when he purchased a luxury watch from Opulent (hereinafter "Watch").  (*Id.* ¶¶ 8-9.)  He alleges that Opulent was a creditor that attempted to recover damages in connection with the sale of the Watch when it filed the underlying litigation.  (*Id.* ¶¶ 13-14.)  Plaintiff also alleges that Defendants were acting as debt collectors when they filed the underlying litigation (*Id.* ¶¶ 10-11), and that they regularly engage in the business or industry of debt collection.  (Complaint ¶ 12.)

The Complaint provides little to no explanation of the transaction between the Plaintiff and Opulent which gave rise to the underlying litigation—the alleged debt collection action.  (See generally Complaint.)  However, it incorporates by reference the pleadings from the underlying litigation including Opulent's Complaint (*Id.* ¶ 14) along with exhibits.  These exhibits include the Terms and Conditions in relationship to the sale of the Watch and a series of emails between Opulent and Plaintiff.  (Terms and Conditions, Complaint Ex. B, ECF No. 1-2 pages 16-25; Emails between Opulent and Plaintiff, Complaint Ex. B, ECF No. 1-2 pages 38-45.)

An understanding of the facts giving rise to the underlying litigation is necessary to understand the legal issues presented in the case *sub judice*, and a recitation of these facts can be found in Opulent's Complaint.  Opulent's Complaint, alleges that on or about October 23, 2018,

---

[3]  The agreement for the sale of the Watch is attached to the Complaint; a review of the agreement illustrates that it contains a forum selection clause that permits suit in Philadelphia, Pennsylvania.  Defendants filed a suit on behalf of Opulent in Philadelphia Pennsylvania.  (*Id.* ¶¶ 14-15.)

Plaintiff purchased a rose gold and black rubber clad Audemars Piguet Royal Oak Offshore Watch from Opulent's website for Twenty- Nine Thousand, Nine Hundred and Ninety-Five Dollars ($29,995.00). (*Id.* ¶ 13.)  When completing the check-out process, Plaintiff agreed to Opulent's Terms and Conditions which provide that all disputes between the parties would be resolved in Philadelphia County, applying Pennsylvania law. (*Id.* ¶¶ 14-15.)  After Plaintiff paid for the Watch, Opulent packaged the Watch and mailed it to Plaintiff via FedEx Priority Overnight. (*Id.* ¶¶ 16-18.)  The package containing the Watch was delivered to Plaintiff the next day. (*Id.* ¶ 19.)

Shortly after receiving the Watch, Plaintiff began making claims about not having received paperwork for the Watch and later claiming that the Watch that Opulent sent him was counterfeit. (*Id.* ¶¶ 20-24.)  In January of 2019, Plaintiff opened a "chargeback" claim with his payment processor alleging that he was defrauded and that he received counterfeit merchandise. (*Id.* ¶ 25.)  However, after Opulent provided evidence of the Watch being packaged along with delivery confirmation of the Watch, the claim was resolved in Opulent's favor. (*Id.* ¶ 26.)  In February of 2019, Plaintiff opened another chargeback claim, this time claiming that he did not receive the Watch from the Opulent and ultimately prevailed, resulting in his receiving a full refund of Twenty-Nine Thousand, Nine Hundred and Ninety-Five Dollars ($29,995.00). (*Id.* ¶¶ 27-28.)  Plaintiff received a full refund; however, despite receiving a full refund, Plaintiff did not return the Watch to Opulent. (*Id.* ¶ 29.)

On or about December 14, 2020, Kaminsky Law filed Opulent's Complaint with claims for conversion of Opulent's property, unjust enrichment, and fraud based on knowingly false and fraudulent statements made by Plaintiff in order to keep both the Watch and the funds that were returned to him by his bank. (Complaint ¶ 13; Opulent's Complaint.)  Claims for unjust

3

enrichment and fraud were struck from the underlying state court action after the court sustain

preliminary objections to the Opulent's Complaint.  (Complaint ¶¶ 24-25, Ex C, ECF No. 1-3

(Order entered in underlying matter).)  Thereafter, the sole remaining claim was one for

conversion.  (*Id.*)

## II.      LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of

the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party.

*Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The facts alleged must be

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint will survive a

motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible

claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.     DISCUSSION

### A.      Defendants' Motion to Dismiss for Failure to State a Claim is Granted

Defendants did not violate the FDCPA when they filed the underlying state court action

on behalf of Opulent.  A reading of Opulent's Complaint, illustrates that it was not filed in an

attempt to collect on a debt as defined by the FDCPA; rather, it was filed primarily based on the

tort theory of conversion in an attempt to recover damages in relationship to Opulent's purported

theft of its Watch.

To state a cause of action under the FDCPA, a plaintiff must allege that: "(1) [Plaintiff] is

a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves

an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a

provision of the FDCPA in attempting to collect the debt." *Douglas v. Convergent Outsourcing*,

765 F.3d 299, 303 (3d Cir. 2014) (citing *Pieper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).)

The Third Circuit adheres to a three-part test to determine what amounts to a "debt" under the FDCPA. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358-61 (3d Cir. 2018). First, the court considers whether the underlying obligation "arises out of a transaction" or whether, instead, it "arises by virtue of a legal status." *Id.* at 360; 15 U.S.C. § 1692a (5). The Third Circuit defines a transaction as "a consensual exchange involving an affirmative "request' and the rendition of a service of purchase of property or other item of value." *Id.* (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)). An obligation arises by virtue of a legal status when there is "an involuntary obligation attendant to the fact of having a specific legal status such as that of a property owner, legal resident, or tortfeasor or other type of offender under criminal or civil law." *Id.* (citing *Pollice*, 225 F.3d at 401; *Staub*, 626 F.2d at 278; *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168 (3d Cir. 1987). Second, if the obligation arises out of a transaction, the court identifies "what is being rendered in exchange for the monetary payment." *St. Pierre*, 898 F.3d at 361. Finally, the court considers "the characteristics of that money, property, insurance, or services to ascertain whether they are 'primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C. § 1692a (5)).

Stated in the most concise form, the Third Circuit in *Zimmerman* supplied the definition of "debt" for purposes of the FDCPA:

> We find that the type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, *i.e.*, one involving the offer or extension of credit to a consumer. Specifically, it is *a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment.*

*Zimmerman*, 834 F.2d at 1168-69.  Attempts to collect on obligations that arise out of tortious

acts are not prohibited by the FDCPA.  *Id.* ("Nothing in the statute or its legislative history leads

us to attribute to Congress a purpose to protect against a perceived problem with the use of

abusive practices in collecting tort settlements from alleged tortfeasors through threats of legal

action.").

The Complaint filed in this matter constitutes little more than a threadbare recital of

allegations that Defendants violated the FDCPA.  (See generally Complaint.)  It provides little to

no explanation of the transaction between the Plaintiff and Opulent which gave rise to the

underlying litigation—the alleged debt collection action.  (*Id.*)  However, a reading of the

Complaint combined with all exhibits attached thereto – which includes Opulent's Complaint –

illustrates that Opulent was not acting as a creditor that was attempting to collect on a debt as

defined by the FDCPA when it filed the underlying action.  Rather, Opulent was proceeding

primarily on a theory of conversion which does not fall within the purview of the FDCPA.

*Scher v. Sherman*, No. 19-16077, 2020 U.S. Dist. LEXIS 238904, *14 (N.J.D. December 18,

2020) (attempts to collect on tort settlements based on allegations of fraud to convert online

video game currency by an alleged tortfeasor are not attempts to collect a debt within the

meaning of the FDCPA); *Beauvoir v. Israel*, 794 F.3d 244, 247-48 (2d Cir. 2015) (holding that

money owed as a result of theft is not "an obligation or alleged obligation of a consumer to pay

money arising out of a transaction" and, therefore, does not constitute a debt for purposes of the

FDCPA); *Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D. Ohio 1994) (finding no debt under the

FDCPA where the alleged theft of cigars was the basis of the collection action); *Fleming v.

Pickard*, 581 F.3d 922, 926 (9th Cir. 2009) ("[W]e have little difficulty concluding that

Defendants' cause of action against Plaintiffs for wrongful conversion does not, as a matter of

law, constitute a debt for purposes of the FDCPA."); *Hadnot v. Ackerman*, No. 19-cv-1949, 2020 U.S. Dist. LEXIS 112028 (N.D. Tex. June 25, 2020) ("Consistently, courts have determined liability arising from tort and theft does not constitute a "debt" under the FDCPA.").

A review Opulent's Complaint illustrates that the underlying litigation was filed in an attempt to recover damages associated with an alleged tort of conversion. This purported conversion was not contemplated when Opulent entered into the original transaction in which it agreed to sell the Watch to Plaintiff. The alleged claims asserted in Opulent's Complaint do not arise simply from a purported agreement or contract to sell the Watch; the claims asserted arise from a broader social duty recognized by tort. The pleadings associated with this case further suggested that the underlying transaction was related to an ordinary agreement to purchase the Watch with payment being due prior to the Watch being forwarded to Plaintiff. There is no specific factual allegation in the Complaint that, either at the time of the transaction or subsequently, Defendant extended to the Plaintiff the opportunity to defer payment until after receipt of the Watch. The fact pattern as pled in the case *sub judice* bears no similarity to a situation presented by a dishonored check. *Bass v. Stolper*, 111 F.3d 1322 (7th Cir. April 18, 1997) (holding that a dishonored check issued by a consumer in good faith in a transaction for goods or services creates an obligation that constitutes a debt within the definition of the FDCPA). In this instance, there is no indication that after agreeing to purchase the Watch, Plaintiff had insufficient funds to cover the cost; rather, in this situation Plaintiff disputes whether he has an obligation to pay at all, and he has allegedly retained possession of the Watch.

The Court takes no position on the merits of the underlying litigation in rendering its decision that Plaintiff's FDCPA claim fails. The Court makes no credibility determination on the Parties' respective positions in the underlying case, and a credibility determination is

unnecessary.  The Court simply finds that allegations of conversion, fraud and unjust enrichment stated in Opulent's Complaint in relationship to the transaction at issue therein do not state a claim under the FDCPA.

When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*., 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).  Therefore, the Court will grant Defendants' motion to dismiss without leave to amend.

**B.**     **Defendants' Motion for Rule 11 Sanctions is Denied**

Defendants filed a Motion for Rule 11 Sanction in which they seek damages from Plaintiff and Plaintiff's Counsel.  (Defendants' Motion for Sanctions, ECF No. 6.)  They argue that Plaintiff's action was filed for an improper purpose and that the claims in the Complaint are frivolous and wholly unsupported under the existing law.  (Brief in Support of Motion for Sanctions page 1, ECF No. 6-2.)  With regard to Plaintiff's Counsel, Defendants argue that he failed to perform a reasonable investigation to determine if the allegations in the Complaint were true.  (*Id.* page 2.)  They further argue that the Complaint was filed in disregard for well

established "Third Circuit law relating to the FDCPA's application to tort claims sounding in theft / Conversion."  (*Id.* page 8.)

Fed. R. Civ. P. 11 requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). In doing so, the:

> attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

To satisfy the affirmative duty imposed by Rule 11, an attorney or party must inquire into both the facts and the law before filing papers with the court.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 545, (1991); *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1091 (3d Cir. 1988); and *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (A plaintiff must "stop, think, investigate and research" before initiating a lawsuit or filing a paper with the court).  This requirement applies equally to "attorneys, parties represented by attorneys, and parties who appear pro se."  *Bus. Guides*, 498 U.S. at 545. "The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact."  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991).

If a court determines that Rule 11(b) has been violated after notice and an opportunity to respond, it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* 11(c)(1).  The plain language of Rule 11 indicates the discretionary nature of the decision to award sanctions in the form of attorneys' fees and costs.  *Id.*  Rule 11 sanctions are intended to be used only in exceptional circumstances. *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success).  A district court must look objectively as to whether the imposition of sanctions would be reasonable under the circumstances.  *Id.*

After a review of the Complaint and the exhibits attached thereto, the Court is not persuaded that Plaintiff's claims are so frivolous as to warrant sanctions and, therefore, denies Defendants' Motion for Rule 11 Sanctions.  In this posture, the Court cannot find that Plaintiff lacked an objectively reasonable factual basis for filing suit against the Defendants, or that Plaintiff's position is wholly unsupported by existing law.

## IV.   CONCLUSION

For the above stated reasons, the Court grants the Motion to Dismiss filed by Defendants and will deny their Motion for Sanctions Pursuant to Rule 11.


BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge

10